ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| JEFFREY BRADFORD JONES, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 313-005 |
| | ) | |
| BRIAN OWENS, Commissioner, Georgia | ) | |
| Department of Corrections, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, who is currently incarcerated at Georgia State Prison ("GSP") in Reidsville, Georgia, brought the above-captioned case pursuant to 42 U.S.C. § 1983.[1] Because he is proceeding *in forma pauperis* ("IFP"), the Court screened his complaint pursuant to 28 U.S.C. §§ 1915(e) & 1915A. In a Report and Recommendation ("R&R") issued on March 6, 2013, the Court found that Plaintiff's complaint should be dismissed without prejudice for his failure to exhaust his administrative remedies prior to filing his lawsuit. (Doc. no. 7.)

In response to the Court's R&R, Plaintiff has submitted objections, as well as two

---

[1]Although Plaintiff is currently incarcerated at Georgia State Prison, his complaint concerns events that allegedly occurred at Telfair State Prison in Helena, Georgia. (See doc. no. 1, pp. 4-5.)

documents entitled "Amend."[2] (Doc. nos. 11, 12, 13.) In the aggregate, those filings contain previously undisclosed information alleging that Plaintiff made repeated efforts to exhaust the claims asserted in his complaint beyond the informal grievance stage, but that he was prevented from doing so by various prison officials at GSP. (Id.) Accordingly, the Court will proceed to re-screen Plaintiff's complaint in accordance with the IFP statute. Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e) & 1915A.

I. **BACKGROUND**

Having previously summarized Plaintiff's claims in considerable detail in the March 6th R&R, the Court draws heavily from that summary in setting forth Plaintiff's claims here. Plaintiff names the following Defendants in his complaint: (1) Brian Owens, the Commissioner of the Georgia Department of Corrections; (2) David Frazier, the Warden at Telfair State Prison ("TSP"); (3) Sam Zanders, a Deputy Warden at TSP; (4) Misty Winters, the "Chief Counselor" at TSP; (5) Mr. Towns, a Unit Manager at TSP; (6) Mr. Spires, a Captain at TSP; (7) Ms. Grant, a Lieutenant at TSP; (8) Mrs. Picketts, a correctional officer at TSP; and (9) Ms. Smith, another correctional officer at TSP. (See doc. no. 1, pp. 1, 4.)

---

[2]Notably, the two documents entitled "Amend" concern only Plaintiff's attempts to exhaust his administrative remedies and have no bearing on the substance of the claims set forth in his complaint. (See doc. nos. 1, 12, 13.) Accordingly, the Court does not construe those two documents as attempts to amend the complaint.

Plaintiff alleges that, on November 14, 2011, after learning about a "hit" that had placed on him to be "stabbed to death," he told Defendants Spires, Grant, and Towns that he did not feel safe and requested that he be given "special housing for [his] safety." (Id. at 5.) Plaintiff alleges that Defendant Spires told him that he should get a big knife for protection, that Defendant Grant commented that he was a "big [tough] guy" and looked like he could handle himself, and that Defendant Towns told him that they would look into the matter. (Id.) Plaintiff alleges that he then wrote letters to Defendants Frazier, Zanders, and Winters, in which he explained that he felt that he was in danger and recounted his conversation with Defendants Spires, Grant, and Towns. (Id.) Plaintiff next alleges that, on November 21, 2011, after not hearing from anyone concerning the matter, he was "stabbed 21 times by unknown [assailant]" in the back, face, wrist, head, and arm, after which he was "flown to ICG in Macon" to be treated for his wounds. (Id.) Plaintiff alleges that Defendant Smith, the "dorm officer," was "nowhere around her assigned post [during the attack] due to officer shortage." (Id.)

Plaintiff asserts that he received and continues to receive various treatments for the physical and mental trauma that he sustained as a result of the attack but that he continues to suffer from nightmares, paranoid feelings, and depression. (Id. at 5-6.) In connection to his treatment, Plaintiff alleges that, due to "poor care from medical," his kidney became infected, and that, moreover, he was given "Motrin" by an unknown "nurse on call" between November 25 and 27, 2011, despite telling that nurse that he was allergic to that medication. (Id. at 6.) Plaintiff alleges that, as a result of taking Motrin, his stomach lining "was [eaten]

up" and that he continues to suffer from "excessive" pain in his stomach. (Id.) Plaintiff also alleges that, at some point, an unknown nurse directed that he be sent back to TSP despite her having been told by a "doctor/nurse at Macon Memorial Hospital that [he] needed to be sent to [a] medical hospital." (Id.)

Plaintiff generally asserts that, prior to his stabbing, the "Administration" had knowledge of the violence taking place at TSP based on various prior stabbings and the "history of violence" at TSP, but that it failed to adequately control that violence. (Id.) In his request for relief, Plaintiff seeks compensatory and punitive damages and additionally requests that his medical and legal bills be paid. (Id. at 7.)

## II. DISCUSSION

Liberally construing Plaintiff's allegations in his favor and granting him the benefit of all reasonable inferences to be derived from the facts alleged, the Court finds that the complaint fails to state a claim for relief against Defendants Owens, Frazier, Zanders, Winters, Picketts, and Smith.

First, Plaintiff does not mention Defendants Owens, Frazier, Zanders, Winters, Picketts, and Smith in his complaint aside from first naming them in the caption of the complaint and later asserting that, in the case of Defendants Frazier, Zanders, and Winters, he wrote those Defendants letters concerning his fear for his safety and his conversation with Defendants Spires, Grant, and Towns. (Doc. no. 1, pp. 1, 5.) Plaintiff also asserts in an entirely conclusory manner that Defendant Owens "knew about but neglected to do anything about" an officer shortage at TSP. (Id. at 5.) However, "[s]ection 1983 requires proof of an

affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." LaMarca v. Turner, 995 F.2d 1526, 1538 (11th Cir. 1993) (internal quotation marks and citations omitted). The Eleventh Circuit has held that a district court properly dismisses defendants where a prisoner, other than naming the defendant in the caption of the complaint, fails to state any allegations that associate the defendants with the purported constitutional violation. Douglas v. Yates, 535 F.3d 1316, 1321-22 (11th Cir. 2008) (citing Pamel Corp. v. P.R. Highway Auth., 621 F.2d 33, 36 (1st Cir. 1980) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong.")). Thus, in the absence of an allegation of any connection between actions of Defendants Owens, Frazier, Zanders, Winters, Picketts, and Smith and an alleged unconstitutional deprivation, Plaintiff fails to state a claim for relief against those Defendants. On that basis, Defendants Owens, Frazier, Zanders, Winters, Picketts, and Smith should be dismissed.

Moreover, Plaintiff's claim against Defendants Defendants Owens, Frazier, Zanders, Winters, Picketts, and Smith is also inadequate to the extent that Plaintiff is attempting to hold them responsible for the acts of Defendants Spires, Grant, and Towns, against whom Plaintiff directs allegations of deliberate indifference to his safety, or the act of unknown nurses and doctors at TSP, against whom Plaintiff appears to direct allegations of deliberate indifference to his serious medical needs. "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or

vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 & 694 n.58 (1978). Likewise, supervisors cannot be sued under § 1983 simply on a theory of *respondeat superior*. See Kruger v. Jenne, 164 F. Supp.2d 1330, 1333-34 (S.D. Fla. 2000) (citing Powell v. Shopco Laurel, Co., 678 F.2d 504 (4th Cir. 1982)) (explaining that [supervisor] which provided medical care for state inmates could not be sued under § 1983 on *respondeat superior* theory). To hold a supervisory official liable, Plaintiff must demonstrate that either (1) the supervisor actually participated in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor and the alleged constitutional violation. Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)).

As noted above, the only mention of Defendants Owens, Frazier, Zanders, Winters, Picketts, and Smith is in the caption of Plaintiff's complaint, in reference to letters Plaintiff allegedly wrote to Defendants Frazier, Zanders, and Winter, and to assert vague claims as to Defendant Owens' knowledge of under-staffing at TSP, and nowhere does Plaintiff mention that Defendants Owens, Frazier, Zanders, Winters, Picketts, and Smith actually participated in any purported constitutional violation. Similarly, Plaintiff fails to allege a "causal connection" between Defendants Owens, Frazier, Zanders, Winters, Picketts, and Smith and the asserted constitutional violation. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (*per curiam*) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history

of widespread abuse[3] puts the responsible supervisor [or employer] on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's [or employer's] improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."[4] Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). Plaintiff has not made the necessary showing with respect to Defendants Owens, Frazier, Zanders, Winters, Picketts, and Smith. As to Plaintiff's apparent attempt to assert a claim for deliberate indifference to his serious medical needs, his allegations that an unknown nurse decided to send him back to TSP rather than to a "medical hospital" and that another unknown nurse prescribed him Motrin are unavailing. Plaintiff conspicuously makes no attempt whatsoever to connect those allegations to any named Defendant, and he accordingly fails to allege any

---

[3]The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added).

[4]Notably, Plaintiff does not satisfy his burden of putting Defendants Frazier, Zanders, and Winters on notice of a widespread problem or otherwise show that those Defendants were directly involved with Plaintiff's alleged claims simply by alleging that he wrote letters to those Defendants addressing those claims. See Crowder v. Lash, 687 F.2d 996, 1005-06 (7th Cir. 1982) (rejecting claim that Commissioner of Department of Corrections could be held liable for damages from any constitutional violation at a facility within his jurisdiction based on receipt of a letter describing allegedly improper prison conditions). That proposition is especially true where, as here, Plaintiff does not allege that Defendants Frazier, Zanders, and Winters were even aware of or received those letters.

causal connection between a named Defendant and a claim for deliberate indifference to his medical needs.[5] Zatler, 802 F.2d at 401. Accordingly, Plaintiff has failed to state a claim upon which relief may be granted against Defendants Owens, Frazier, Zanders, Winters, Picketts, and Smith.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's claim for deliberate indifference to his serious medical needs be **DISMISSED**,[6] and that Defendants Owens, Frazier, Zanders, Winters, Picketts, and Smith be **DISMISSED**

---

[5] Notably, even if Plaintiff *had* connected his claim for deliberate indifference to his medical needs to a named Defendant, he would have nonetheless failed to state a viable claim for deliberate indifference. Plaintiff's allegations – that he should have been sent to another hospital after returning to TSP from Macon Memorial Hospital, and that he should not have been given Motrin because his mother told him that he was allergic to it – are altogether insufficient to state such a claim, in that they do not present a sufficiently serious medical problem nor conscious disregard of a risk of serious by any individual, named or otherwise. See Farmer v. Brennan, 511 U.S. 825, 834 (1994); Thomas v. Bryant, 614 F.3d 1288, 1304 (11th Cir. 2010). Moreover, a mere difference of opinion between an inmate and prison medical officials over a diagnosis or course of treatment does not give rise to a valid claim of deliberate indifference. Smith v. Fla. Dep't of Corr., 375 F. App'x 905, 910 (11th Cir. 2010) (*per curiam*).

[6] Although docketed as a "notice," Plaintiff has filed what appears to be a motion requesting increased access to the law library. (Doc. no. 14.) In that motion, Plaintiff asserts that, although he is "on the law library list," he is not being allowed access to the library with the frequency that he desires, and he accordingly requests that he be allowed at least one visit per week. (Id. at 1-2.) However, as federal courts should avoid unwarranted interference in the day-to-day administration of state prisons, the Court will not order the prison to provide Plaintiff with greater access to the law library. See Prieser v. Rodriguez, 411 U.S. 475, 491-92 (1973). Accordingly, Plaintiff's request for more law library time is **DENIED**. (Doc. no. 14.)

from this case.[7]

SO REPORTED and RECOMMENDED this 3rd day of May, 2013, at Augusta, Georgia.

_W. Leon Barfield_
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[7]In a simultaneously issued Order, the Court has directed that service of process be effected on Defendants Spires, Grant, and Towns, based on Plaintiff's claim against those Defendants for deliberate indifference to his safety.