ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2014 JAN 13 AM 10:14

CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| JEFFREY BRADFORD JONES, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 313-005 |
| ) | |
| MR. TOWNS, Unit Manager, et al., ) | |
| ) | |
| Defendants. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate incarcerated at Georgia State Prison ("GSP") in Reidsville, Georgia, brought the above-captioned case pursuant to 42 U.S.C. § 1983, concerning events that allegedly took place at Telfair State Prison ("TSP") in Helena, Georgia. Plaintiff is proceeding *pro se* and *in forma pauperis* ("IFP"). The matter is presently before the Court on Defendants' pre-answer motion to dismiss and Plaintiff's related motions to strike. (Doc. nos. 27, 34, 35, 36, 37, 39, 40.) For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's motions to strike be **DENIED** (doc. nos. 34, 35, 36, 37, 39, 40), Defendants' motion to dismiss be **GRANTED** (doc. no. 27), and that this case be **DISMISSED** and **CLOSED**.

## I.   BACKGROUND

Because Plaintiff is proceeding IFP, the Court screened his complaint pursuant to 28 U.S.C. §§ 1915(e) and 1915A, and allowed him to proceed with his claim against

Defendants Towns, Spires, and Grant for deliberate indifference to his safety.[1] (Doc. no. 17.) The Court noted that Plaintiff may not have satisfied the exhaustion requirement of 42 U.S.C. § 1997e(a), but declined to make definitive findings at that time because the issue was not clear on the face of the complaint. (Doc. no. 17, p. 4 n.3.) With respect to the sole remaining claim, Plaintiff alleges the following facts.

On November 14, 2011, Plaintiff learned that a "hit" had been placed on him. (Doc. no. 1, p. 5.) Plaintiff told Defendants that he did not feel safe and requested "special housing for [his] safety." (Id.) Plaintiff claims that Defendant Spires told him he should get a knife for protection, Defendant Grant told him he was a "big [tough] guy" who could handle himself, and Defendant Towns told him that they would look into the matter. (Id.) Plaintiff never heard from anyone concerning the matter, and on November 21, 2011 he was attacked by an unknown assailant, stabbed 21 times, and thereafter hospitalized for his injuries. (Id.) Five days later, on November 26, 2011, Plaintiff returned to TSP. (Doc. no. 27-2, p. 3.)

More than eight months later on August 6, 2012, after being transferred to Smith State Prison and then to GSP, Plaintiff filed grievance number 127705, in which he stated only "On 8/6/12 I was advised by the counselor that I must first follow the three step grievance process before I file a class action lawsuit on Department of correction, Telfair State Prison and it's [sic] staff for negligence." (Doc. no. 27-11, p. 3.) On September 4, 2012, Plaintiff filed grievance number 130471, in which he claimed that his assault was the

---

[1] In an Order dated May 31, 2013, the District Court dismissed Plaintiff's other claim and Defendants Owens, Frazier, Zanders, Winters, Picketts, and Smith. (Doc. no. 20.)

2

result of negligence on the part of TSP and its staff. (Doc. no. 27-12, p. 3.) Prison officials rejected both grievances due to their being filed out of time. (Doc. no. 27-11, p. 3; doc. no. 27-12, p. 3.)

## II. DISCUSSION

Defendants assert that this case should be dismissed because (1) Plaintiff failed to exhaust his administrative remedies; (2) Plaintiff fails to state a claim for which relief can be granted; (3) Defendants are entitled to qualified immunity; (4) Plaintiff's claims for money damages against Defendants in their official capacities are barred by the Eleventh Amendment; and (5) Defendants cannot be sued in their official capacities under § 1983.[2] (See doc. no. 27.) Defendants have submitted exhibits regarding the availability of the grievance process in Plaintiff's facilities, as well as copies of Plaintiff's grievances, including numbers 127705 and 130471. (Doc. nos. 27-1, 27-3, 27-5, 27-9, 27-11, 27-12, 27-16.) Plaintiff argues that these two grievances show he did in fact exhaust his administrative remedies, and in the alternative that he was prevented from doing so because he was denied access to the grievance process, and was not allowed to appeal the denial of grievance numbers 127705 and 130471. (Doc. no. 43.) Defendants argue that the grievance process was fully available to Plaintiff, but that he filed grievance numbers 127705 and 130471 well out of time and without cause for such untimeliness, and therefore failed to exhaust his administrative remedies. (Doc. no. 27.)

---

[2] Among Plaintiff's responses was a filing entitled "Amended Complaint," which consisted of Plaintiff's assertion that he is suing Defendants in their individual capacities only. (Doc. no. 41.) Defendants have stated they have no objection to Plaintiff's clarification. (Doc. no. 42, p. 2 n.2.)

3

### A. Plaintiff's Motions to Strike Should be Denied.

Plaintiff requests that Defendants' arguments in support of the motion to dismiss be stricken, along with certain exhibits attached to their motion. (Doc. nos. 34, 35, 36, 37, 39, 40.) Federal Rule of Civil Procedure 12(f) provides that the Court may grant a motion to strike as to "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." However, a motion to strike is a drastic remedy, and "should be granted only when the pleading to be stricken has no possible relation to the controversy." Augustus v. Bd. of Public Instruction of Escambia Cnty., 306 F.2d 862, 868 (5th Cir. 1962)[3]. Here, the arguments and exhibits in question are clearly related to the controversy, and are not redundant, immaterial, impertinent, or scandalous. Fed. R. Civ. P. 12(f). Therefore, Plaintiff's motions to strike should be denied.

### B. Defendants' Motion to Dismiss Should be Granted Because Plaintiff Failed to Exhaust His Administrative Remedies.

#### 1. The Legal Framework

Where, as here, the defendants have filed a motion to dismiss based on failure to exhaust administrative remedies, the Eleventh Circuit has laid out a two-step process for courts to use in resolving such motions. First, the court looks to the factual allegations made by both parties, taking the *plaintiff's version as true* were they conflict, and if in that light the complaint is subject to dismissal for failure to exhaust administrative remedies, the defendants' motion will be granted. Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir.

---

[3] The Eleventh Circuit in Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

2008) (citing Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir. 2008) (citations omitted), *cert. denied*, 555 U.S. 1074 (2008)). If the complaint is not subject to dismissal at the first step, then at step two the court makes specific findings to resolve the disputed factual issues, with the defendants bearing the burden of proving that the plaintiff has failed to exhaust his administrative remedies. Id. Based on its findings as to the disputed factual issues, the court determines whether the prisoner has exhausted his available administrative remedies and thus whether the motion to dismiss should be granted. Id. Because exhaustion "is treated as a matter of abatement and not an adjudication on the merits, *it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record.*" Bryant, 530 F.3d at 1376 (citations omitted).

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (*per curiam*); Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998).

5

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005).

Also, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008) (*per curiam*); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (*per curiam*).[4] Finally, under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

---

[4]Other federal circuits have similarly held that the PLRA does not allow a plaintiff to exhaust administrative remedies while his case is pending. See McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002); Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002); Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001); Lee v. Lappin, No. 04-5008, 2004 WL 1701045 (D.C. Cir. July 29, 2004); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999); Perez v. Wisconsin Dep't of Corr., 182 F.3d 532, 538 (7th Cir. 1999).

### 2. The Administrative Grievance Procedure

Because the date of the alleged incident is November 21, 2011, the administrative grievance procedure applicable in this case is governed by the version of the Georgia Department of Corrections' Standard Operating Procedure ("SOP") IIB05-0001 that became effective on June 1, 2004. Once an inmate has unsuccessfully attempted to resolve a complaint through discussion with the staff involved, the administrative remedies procedure commences with the filing of an informal grievance. SOP IIB05-0001 § VI(B). The inmate has ten calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the informal grievance. Id. § VI(B)(5). The timeliness requirements of the administrative process may be waived upon a showing of good cause. See id. § VI(C)(2) & (D)(2). The SOP requires that an inmate be given a response to his informal grievance within ten calendar days of its receipt by the inmate's counselor; the informal grievance procedure must be completed before the inmate will be issued a formal grievance. Id. § VI(B)(12)-(13).

If unsatisfied with the resolution of his informal grievance, an inmate must complete a formal grievance form and return it to his counselor within five business days of his receipt of the written resolution of his informal grievance. Id. § VI(C)(2). Once the formal grievance is given to the counselor, the Warden or Superintendent has thirty (30) calendar days to respond. Id. § VI(C)(14). If the inmate is not satisfied with the Warden's response to the formal grievance, he has five business days from the receipt of the response to file an appeal to the Office of the Commissioner; the Office of the Commissioner or his designee then has ninety calendar days after receipt of the grievance

7

appeal to respond. Id. § VI(D)(2), (5). The grievance procedure is terminated upon the issuance of a response from the Commissioner's Office. See id. § VI(D).

### 3. Plaintiff's Failure to Exhaust

Here, Defendants have shown that Plaintiff's claim should be dismissed because of his failure to satisfy the exhaustion requirement of § 1997e(a). Defendants have produced copies of grievance numbers 127705 and 130471, which show that Plaintiff filed them more than eight months after the ten-day deadline had passed, and that prison officials thus rejected both as untimely. (See doc. nos. 27-11, 27-12.; see also doc. no. 27-9, ¶¶ 28-29.) Because Plaintiff's grievances failed to comply with the administrative deadline, they do not satisfy the exhaustion requirement. Woodford, 548 U.S. at 90.

Plaintiff asserts that grievance 127705 was timely filed within ten days of him becoming aware of the facts giving rise to the grievance, because he filed it as soon as he learned of the exhaustion requirement. (Doc. no. 43, p. 4.) This excuse does not toll the deadline. Even if it could, as this grievance consists of one sentence relating only to exhaustion procedures, it is unrelated to the facts of this case. Because grievance number 127705 does not concern the alleged assault, it is irrelevant and does not satisfy the exhaustion requirements of § 1997e as to Plaintiff's deliberate indifference claim even if it were not filed out of time.

Plaintiff also argues that any failure on his part to exhaust his administrative remedies is due to prison staff denying him access to the grievance process altogether or to the appeal process as to grievance numbers 127705 and 130471. (See generally doc. no. 43.) Therefore, a factual dispute exists as to whether the grievance process was available to Plaintiff. Taking Plaintiff's factual allegations as true, in accordance with the

8

first step of the Turner analysis, the instant complaint is not subject to dismissal, and the Court must proceed to step two of the analysis and make specific findings to resolve the factual dispute. Turner, 541 F.3d 1082-83.

Defendants have provided evidence that the grievance process was fully available to Plaintiff at all relevant times, and that Plaintiff was well-practiced in utilizing it. Plaintiff's grievance history shows that he filed four unrelated grievances—three while at Smith State Prison and one while at GSP—between the time of the alleged assault and Plaintiff's filing of grievance numbers 127705 and 130471. (See doc. no. 27-3, p. 2.) Defendants have also produced affidavits of the grievance coordinators at all three facilities that housed Plaintiff after the alleged attack, wherein they testified that grievance forms are made available to all inmates in their respective facilities at all times. (See doc. no. 27-1, ¶ 6; doc. no. 27-5, ¶ 6; doc. no. 27-9, ¶ 6.) Finally, Defendants have produced the affidavit of Sam Zanders, Deputy Warden at TSP since April 2011, wherein he testified that grievance forms are made available at all times at TSP, and that Plaintiff never indicated he needed or was denied a grievance form. (Doc. no. 27-16, ¶¶ 7, 9, 12.) Plaintiff provides no evidence to rebut the overwhelming evidence provided by Defendants' showing that the grievance process was fully available to him. Therefore, it is clear that the grievance process was available to Plaintiff, and that he in fact used it several times prior to untimely filing grievance numbers 127705 and 130471.

Plaintiff's argument that steps two and three of the grievance process were denied him as to grievance numbers 127705 and 130471 is likewise without merit because, as stated above, those grievances were properly rejected for failing to follow grievance procedures. Plaintiff simply chose not to utilize the grievance process regarding his

9

deliberate indifference claim until well after the deadline had expired, and has not shown cause to excuse the untimeliness of his grievances. As Plaintiff's grievances were filed out of time, and without good cause for their untimeliness, they failed to comply with the administrative deadline and do not satisfy the exhaustion requirement. Woodford, 548 U.S. at 90; Johnson, 418 F.3d at 1159. Therefore, Plaintiff's claim is procedurally defaulted, Johnson, 418 F.3d at 1159, and Defendants' motion to dismiss should be granted.[5]

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's motions to strike be **DENIED** (doc. nos. 34, 35, 36, 37, 39, 40), Defendants' motion to dismiss be **GRANTED** (doc. no. 27), and that this case be **DISMISSED** and **CLOSED**.

SO REPORTED and RECOMMENDED this 13th day of January, 2014, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE

---

[5] In light of the Court's conclusion that Defendants' motion to dismiss should be granted due to Plaintiff's failure to exhaust his administrative remedies, it is unnecessary to address the merits of Defendants' additional arguments.